IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES M. DARR, JR.,

        Plaintiff,

v.

Commissioner of Social Security
Administration,

        Defendant.

Case No. 3:16-cv-1941-CL

OPINION AND ORDER

HOWARD D. OLINSKY, *pro hac vice*
Olinsky Law Group
300 South State Street, Suite 420
Syracuse, New York, 13202

MARK MANNING
Harder, Wells, Baron & Manning, P.C.
474 Willamette St., Suite 200
Eugene, OR, 97401
    Of Attorneys for Plaintiff

BILLY J. WILLIAMS
United States Attorney
RENATA GOWIE
Assistant United States Attorney
District of Oregon
1000 SW Third Ave., Suite 600
Portland, OR 97204-1011

ERIN F. HIGHLAND
Special Assistant United States Attorney
Office of the General Counsel
701 Fifth Ave., Suite 2900 M/S 221A

1- OPINION AND ORDER

Seattle, WA 98104-7075
Of Attorneys for Defendant

*Opinion and Order*

CLARKE, Magistrate Judge:

Plaintiff James M. Darr, Jr., ("Darr") seeks judicial review of the final decision by the Social Security Commissioner ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("SSA"). This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Based on a careful review of the record, the Commissioner's decision is REVERSED and REMANDED for an immediate award of benefits.

*Procedural Background*

Darr filed for SSI on February 6, 2013, alleging disability as of February 1, 2011. Tr. 19. His application was denied initially and upon reconsideration, and a hearing was held on February 20, 2015, before an Administrative Law Judge ("ALJ"); Darr was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 37-68. Darr amended his disability onset date to February 6, 2013 at the administrative hearing. Tr. 19. On March 31, 2015, ALJ Rudolph Murgo issued a decision finding Darr not disabled. Tr. 19-30. Darr requested timely review of the ALJ's decision and, after the Appeals Council denied his request for review, filed a complaint in this Court. Tr. 1-3.

*Factual Background*

Born in 1971, Darr was 42 years old on the disability onset date. Tr. 39. He dropped out of high school after the ninth grade and could not obtain his GED. Tr. 242. He previously worked at a medical sterilizing company and performed construction work. Tr. 185. He alleges

disability due dyslexia, attention deficit disorder, shoulder and neck arthritis, and a tumor in his ear. Tr. 161.

Darr underwent a mental status examination performed by Dr. Phillip Barnard, Ph.D. on December 20, 2012. Tr. 245. Dr. Barnard recorded Darr's medical and social history, and noted that Darr had been diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") at the age of six, had not finished high school, participated in special education classes "throughout his schooling years," and could not get the help he needed to pass the GED exam. Tr. 242. Dr. Barnard diagnosed Darr with ADHD, learning disorder, cannabis dependence, "pain disorder associated with psychological factors as well as a general medical condition," borderline intellectual functioning (onset date childhood), and a 60 GAF score. Tr. 243-44. Dr. Barnard assigned mild or moderate limitations on Darr's ability to perform basic work activities, including moderate difficulties communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, setting realistic goals and planning independently, learning new tasks, and completing a normal work day without interruptions from psychologically based symptoms. Tr. 244. Dr. Barnard conducted several intelligence tests and found Darr could not complete "serial 7's," recall two out of three words after a five minute delay, or spell the word "world" forward or backward. Tr. 245. He scored a 68 on the WAIS-IV IQ test, which Dr. Barnard interpreted as evidence of a limited "fund of knowledge." Tr. 245. "Halstead's Trail Making Test" revealed a moderate and mild range of impairments. Tr. 245.

On November 27, 2012, Nurse Practitioner Rebecca Nelson performed an initial assessment of Darr and noted that he had little recent medical history because he did not have insurance. Tr. 238. Darr presented with a mass growing on his left earlobe that caused significant pain, as well as shoulder pain located in his trapezius and neck muscles. Tr. 238. A subsequent x-

3- OPINION AND ORDER

ray revealed moderate degenerative changes at the C6-7 vertebral levels. Tr. 239. X-rays of Darr's left shoulder, however, revealed normal findings. Tr. 269.

Darr's follow-up appointment with NP Nelson revealed significant hearing loss of the middle frequencies. Tr. 255. NP Nelson also noted neck and left shoulder pain with associated radiculopathy. Tr. 255. On March 5, 2013, Darr complained of numbness in his left arm, as well as pain whenever he moved his neck. Tr. 261.

On June 24, 2013, Arthur Ticknor, M.D., noted that the mass growing on Darr's left earlobe had been successfully excised and an MRI of Darr's left shoulder "showed a labral tear at 6 o'clock" with "juxtalabral cysts." Tr. 278.

On October 21, 2013, Darr underwent an anterior cervical discectomy and fusion at the C6-7 vertebrae. Tr. 339. The attending surgeon noted disc herniation at the C6-7 vertebral level and C7 radiculopathy. Tr. 339. An x-ray of Darr's spine immediately after the procedure noted the C6-7 vertebral levels were in normal alignment, and an additional x-ray two months later revealed normal alignment at the C6-7 levels and unchanged degenerative disc disease at the C4-5 levels. Tr. 345. Darr stated that his symptoms improved after the surgery, but he still felt some residual numbness in his arms. Tr. 353.

Darr's final treatment note on August 1, 2014, showed he was "slowly making progress after [cervical] spine surgery" and used gabapentin for radicular symptoms in his hands and arms. Tr. 297.

*Disability Analysis*

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §

4- OPINION AND ORDER

423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her

5- OPINION AND ORDER

impairments. 20 C.F.R. §§ 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(v); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.; see also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. § 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

*The ALJ's Findings*

At step one of the sequential evaluation process outlined above, the ALJ found Darr had not engaged in substantial gainful activity since he filed his application, February 6, 2013. Tr. 21.

6- OPINION AND ORDER

At step two, the ALJ determined Darr had the following severe impairments: degenerative disc disease of the cervical spine; hearing loss; learning disorder; borderline intellectual functioning; and attention deficit hyperactivity disorder. Tr. 21. The ALJ determined that Darr's somatoform disorder and cannabis dependence did not rise to the level of severe. Tr. 21.

At step three, the ALJ found that Darr's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 22-23. Because Darr did not establish disability at step three, the ALJ continued to evaluate how Darr's impairments affected his ability to work during the relevant period. The ALJ found Darr had the residual functional capacity ("RFC") to perform light work except he:

> [could lift] 20 pounds occasionally, 10 pounds frequently; can stand or walk for a total of 6 out of 8 hours; can sit for a total of 6 out of 8 hours; can occasionally climb ropes, ladders, and scaffolds; can frequently perform all other postural activities including climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling; can work best in work settings that do not require hearing for safety, so cannot hear a warning bell from a forklift; can perform simple, routine tasks with an SVP 1 or 2 type tasks; would work best with superficial public contact or a small group of familiar co-workers; could do normal work limited in learning new routines that require rapid and frequent work changes; unable to read or write; occasional overhead bilateral lifting; and no jobs requiring fine hearing.

Tr. 24.

At step four, the ALJ found that Darr was unable to perform his past relevant work. Tr. 28.

At step five, the ALJ found Darr was capable of performing jobs existing in significant numbers in the national economy, including laundry sorter, electronics worker, and hand packager. Tr. 29. Accordingly, the ALJ concluded Darr was not disabled under the Act. Tr. 29.

*Standard of Review*

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and his or her findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" is "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r*, 554 F.3d 1219, 1222 (9th Cir. 2009) (*quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (*citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id. (citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)); *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*

*Discussion*

The Social Security Regulations' "Listing of Impairments" describes impairments that are so severe as to be considered presumptively disabling, without further consideration of a claimant's residual functional capacity, past relevant work, or other jobs. 20 C.F.R. § 416.920(d); *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir.1990). Listing § 12.05C requires a plaintiff to show: "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation." *Kennedy v. Colvin*,

8- OPINION AND ORDER

738 F.3d 1172, 1176 (9th Cir. 2013). The Court will evaluate Plaintiff's impairment under the version of Listing § 12.05C in effect at the time the ALJ rendered his decision. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 n. 1 (2016) ("[w]e expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions").

Dr. Phillip Barnard, Ph.D., examined Darr on December 20, 2012, and performed various intelligence tests. Tr. 242-46. Darr could not accomplish the "serial 7's" test, recalled two of three words after a five minute time delay, could not spell the word "world" forward or backwards, did not know the capitol of Washington, and scored 68 on the Wechsler Adult Intelligence test. Tr. 245. On the "trail making test" he scored in the moderate and mild ranges of impairment. Tr. 245.

The ALJ found Darr did not meet Listing § 12.05C because he did not have a valid full scale IQ score between 60 and 70 or a physical or mental impairment imposing significant additional workplace restrictions. Tr. 23.

The main point of contention in this case is whether Darr's full scale IQ score of 68 is "valid" under the language of the Listing. The ALJ argued that Darr's IQ score was not within the requirements of the Listing. The Listing, however, required a full scale IQ score between 60 and 70 and Darr achieved a score of 68. Therefore, the ALJ's reasoning does not stand up to scrutiny. *Kennedy*, 738 F.3d at 1176.

In a separate section of the opinion, the ALJ noted that Dr. Barnard "did not describe in his report how he reached the IQ testing scores of claimant with sufficient detail." Tr. 26. Dr. Barnard administered the Wechsler Adult Intelligence Scale, Fourth Edition, to derive Darr's full scale IQ score of 68. Tr. 245. It is unclear what explanation would have satisfied the ALJ, as the

9- OPINION AND ORDER

Wechsler test score is, in itself, an objective explanation of Darr's IQ. *See* STEDMAN'S MEDICAL DICTIONARY 1724 (Julie K. Stegman, 28th ed. 2006) (Wechsler test is a standardized scale "for the measurement of general intelligence" in adults). Dr. Barnard did not express any doubt as to Darr's sincerity or effort during the test, and failed to note any reservations that the score did not reflect Darr's IQ. Therefore, the ALJ erred.

The Commissioner argues that "scores, alone, are insufficient to establish a severe impairment that meets or equals listing 12.05," and the listing requires "comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." Def.'s Br. at 4 (quoting *Brooks v. Barnhart*, 167 F. App'x 598, 600 (9th Cir. 2006)). Here, Dr. Barnard commented on the validity and consistency of Darr's IQ score by diagnosing him with borderline intellectual functioning, attention deficit hyperactivity disorder, and learning disorder. Tr. 243. Dr. Barnard evaluated Darr's narrative history and tested him using different intelligence metrics, and concluded that Darr's results were not within normal limits for memory, "fund of knowledge," concentration, and abstract thought. Tr. 245-46. Furthermore, Dr. Barnard recorded Darr's IQ score and failed to express any doubt as to its validity. Therefore, substantial evidence supports the conclusion that Dr. Barnard's assessment regarding Darr's IQ accurately captured his intellectual functioning.

The ALJ also erred in determining that Darr did not have physical or mental impairments imposing workplace restrictions in addition to his impaired intellectual functioning. An ALJ's finding of severe impairments at step two can demonstrate that a plaintiff has additional impairments for the purposes of Listing § 12.05C. *See Conley v. Colvin*, WL 1370707, *3 (D. Or. 2017) ("[a] finding of a severe impairment at step two of an ALJ's sequential analysis is a per se finding of a physical or mental impairment imposing an additional and significant work-

10- OPINION AND ORDER

related limitation under [Listing] 12.05C"). The ALJ found that Darr had severe impairments at step two, such as degenerative cervical disc disease and hearing loss. Tr. 21. Therefore, the ALJ erred and Darr satisfied the "additional impairment" prong of Listing § 12.05C.

Similarly, Darr demonstrated the onset of his impairment before age 22, as required by the Listing. "A claimant may use circumstantial evidence to demonstrate adaptive functioning deficits, such as attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history." *Pedro v. Astrue*. 849 F.Supp.2d 1006, 1011-12 (D. Or. 2011). Here, Darr participated in special education classes and dropped out of high school after ninth grade. Tr. 43, 242. He could not read or write. as the ALJ acknowledged in his evaluation of Darr's RFC, and could not pass the GED test. Tr. 24, 43, 242. Darr's step-mother filled out his disability paperwork, and he required a verbal test to pass his driver's license exam. Tr. 43, 61. Therefore, the record reflects that Darr satisfied the final prong of Listing § 12.05C.

*Remand*

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*. 761 F.2d 530 (9th Cir. 1985)). Generally, when a court reverses an administrative decision, " 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.' " *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989); *Smolen*, 80 F.3d at 1292.

11- OPINION AND ORDER

On this record, remanding the case for an immediate award of benefits is appropriate. The ALJ erred by failing to find Darr met Listing § 12.05C. The record amply demonstrated that Darr met the Listing, as he has a valid full-scale IQ score of 68, a demonstrated onset date before the age of 22, and other severe physical or mental impairments affecting his workplace performance. Accordingly, the Court does not reach Plaintiff's further assignments of error. As no useful purpose would be served by further administrative proceedings, the Court remands the case for an immediate award of benefits. *See Kennedy*, 738 F.3d at 1174-75 (when a claimant satisfies the requirements of a Listing "the claimant is considered disabled and benefits are awarded").

*Conclusion*

Based on the foregoing, the Commissioner's decision denying Darr's application for SSI is REVERSED and REMANDED for an immediate award of benefits.

DATED this 11 day of April, 2018.

Mark Clarke
United States Magistrate Judge